IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY S. DUTTA,<br><br>    Plaintiff,<br><br>  v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>    Defendant. | No. 3:14-cv-04292-CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Bobby S. Dutta ("Dutta") brought this action against Defendant State Farm Mutual Automobile Insurance Company ("State Farm") based on the latter's alleged violations of the Fair Credit Reporting Act ("FCRA"). See First Am. Compl. ("FAC") (dkt. 28) ¶ 2; 15 U.S.C. §§ 1681-1681x. State Farm obtained Dutta's consumer report when he applied for a job but did not give him (1) a timely copy of the report, (2) a timely summary of his rights under the FCRA, and (3) sufficient time to correct inaccuracies. FAC ¶¶ 8-33.

State Farm moves for summary judgment, arguing that Dutta does not have Article III standing for want of injury in fact. See MSJ at 2 (dkt. 61). In the alternative, State Farm requests a bifurcated discovery process. See id.

## I.   BACKGROUND

### A.   Statutory Framework

The FCRA seeks to ensure "fair and accurate credit reporting" by regulating the creation and use of "consumer report[s]" by "consumer reporting agenc[ies]" for specific purposes. See 15 U.S.C. §§ 1681(a)(1), 1681a(d)(1)(A)-(C), 1681b. These purposes include

United States District Court
For the Northern District of California

credit transactions, insurance, licensing, consumer-initiated business transactions and – as relevant here – employment. See § 1681b. The FCRA applies to companies that "regularly disseminate information bearing on an individual's 'creditworthiness, credit standing, credit capacity, charter, general reputation, personal characteristics, or mode of living." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1545 (2016) (internal quotation marks omitted).

Among other things, the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of consumer reports, § 1681e(b); to notify providers and users of consumer information of their responsibilities under the Act, § 1681e(d); to limit the circumstances in which such agencies provide consumer reports "for employment purposes, § 1681b(b)(1); and to post toll-free numbers for consumers to request reports, § 1681j(a)." Id. (internal quotation marks omitted).

**B. Factual Background**

Dutta applied for a job at State Farm on March 3, 2014. FAC ¶ 8. On March 6, Dutta took a Sales and Leadership Career Profile test at State Farm's request. FAC ¶¶ 8-9. Shortly thereafter, Dutta signed a form authorizing State Farm to obtain a consumer credit report for employment purposes, which State Farm ordered from an outside agency. FAC ¶¶ 10-12. On March 10, State Farm informed Dutta that he had passed the SLCP and advanced to the next stage of the hiring process. FAC ¶ 13.

The following day, State Farm told Dutta that, because of negative items on his credit report, it had denied his application. FAC ¶ 14. Dutta was not given a copy of the report or notified that he could dispute it until three days later, when he received a Pre-Adverse Action notice. FAC ¶ 15.

On March 17, Dutta called State Farm to dispute its decision. FAC ¶ 17. State Farm emailed him the next day, confirming that he had been "withdrawn from the State Farm Agency Career Track program." FAC ¶ 18. Dutta alleges that State Farm should have investigated further but did not. FAC ¶ 17.

**C. Procedural Background**

Dutta filed his initial complaint on September 23, 2014, asserting claims on behalf of

two overlapping classes of similarly situated persons: (1) those who were injured in the two years preceding the Complaint filing date ("Class A") and (2) those who were injured in the five years preceding the Complaint filing date ("Class B"). See Compl. (dkt. 1). Dutta filed an amended complaint on December 12, 2014. FAC ¶ 2.

Dutta maintains that his consumer report contained inaccurate information that "misrepresented Dutta's credit worthiness and financial responsibility," and that State Farm systematically makes adverse employment decisions before timely providing applicants with (1) a copy of their consumer report, (2) a summary of their rights, and (3) a sufficient time to correct any inaccuracies. FAC ¶¶ 1, 16, 25. Dutta further alleges that State Farm routinely uses credit reports to make hiring decisions and then provides notice to consumers to "feign compliance with the FCRA." FAC ¶ 26.

On January 9, 2015, State Farm moved to strike the class claims or, alternatively, to dismiss claims pertaining to Class B for want of standing. Mot. to Dismiss (dkt. 32). The Court stayed proceedings, awaiting the Supreme Court's decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). See Order (dkt. 60).

With that decision in hand, State Farm moved for summary judgment. MSJ (dkt. 61).

## II.   LEGAL STANDARD

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). A dispute is genuine if the admissible evidence on the record "is such that a reasonable jury could return a verdict" for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. Id. at 248–49 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)). To determine whether a genuine dispute as to any material fact exists, the court must view the evidence in the light most favorable to the non-moving party. Id. at 255.

In determining whether to grant or deny summary judgment, it is not a court's task "to

3

scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted). Rather, a court may rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." See id. But although a court need only consider materials cited by the parties, it may also consider other materials in the record. Fed. R. Civ. Proc. 56(c)(3).

## III.  DISCUSSION

A plaintiff must have Article III standing to sue. See Valley Forge Christian Coll. v. Ams. Utd. for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). And to establish standing, a plaintiff must (1) have suffered an "injury in fact" that was (2) caused by the defendant's challenged actions and would (3) be "redressed by a favorable court decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Because these are constitutional requirements, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." Id. (quoting Raines v. Byrd, 521 U.S. 811, 820, n.3 (1997)).

This case turns on the first requirement: injury in fact. A plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." Spokeo, 136 S. Ct. at 1548. To be "concrete," it must not be a "bare procedural violation." Id. at 1550.

Denial of access to information can be a concrete harm under the right circumstances. But there must be an actual denial of information – not just a delay in getting it. See, e.g., Fed. Election Comm'n v. Akins, 524 U.S. 11, 21 (1998) (holding that plaintiffs who never received certain disclosures about political activities suffered a concrete injury in their "inability to obtain information"). Here, State Farm gave Dutta the information required under the FCRA. FAC ¶ 15. It just did so three days later than it should have. FAC ¶ 15. Dutta's case thus hinges on whether

4

1  he suffered a concrete injury from the delay.  He did not.

2     A "violation of one of the FCRA's procedural requirements may result in no
harm" if, for example, the consumer report is "entirely accurate." Spokeo, 136 S. Ct.
at 1550.  That is the case here.  Dutta disputes only whether a "charge-off" on a
significant amount of delinquent debt occurred within State Farm's designated look-
back period – but not whether the charge-off occurred.  See Dutta Decl. (dkt. 64-2)
Ex. 3.  In other words, he wanted the timely chance to dispute how State Farm treated
accurate information,[1] rather than the timely chance to correct inaccurate information.
That is not what the FCRA protects.  See 15 U.S.C. § 1681(a)(4) ("There is a need to
insure [sic] that consumer reporting agencies exercise their grave responsibilities
with fairness, impartiality . . . ." (emphasis added)).

   If that were not enough – and it is – several other items in Dutta's consumer
report left him no chance of getting hired.  Besides the charge-off, his consumer
report also showed fifteen late payments on two separate accounts, all of which were
more than 90 days late.  See Beasley Decl. (dkt. 67-4) ¶ 13.  Three late payments
alone would have disqualified him.  Id.  Dutta disputes none of them.

   At bottom, Dutta complains that State Farm denied him the chance to raise a
doomed dispute three days earlier.  That is a textbook example of a "bare procedural
violation."  See Spokeo, 136 S. Ct. at 1550.

## IV.  CONCLUSION

   For the foregoing reasons, the Court GRANTS State Farm's motion for
summary judgment.  It need not address discovery.

   **IT IS SO ORDERED.**

   Dated: November 3, 2016

                                             CHARLES  R. BREYER
                                             UNITED STATES DISTRICT JUDGE

---

[1] Dutta did in fact dispute this – and rightfully lost. Dutta Decl. Ex. 3. Although he last made a payment on the debt outside the look-back period, the bank charged-off the debt within it. See id.